# FREDRICKSON & WATSON CONSTRUCTION COMPANY, ET AL. v. ELIZABETH E. BOYD AND H. E. BOYD, HER HUSBAND.

No. 3221

May 2, 1940.

102 P. (2d) 627.

118

*E. F. Lunsford* and *Morley Griswold*, for Appellants.

*Sherman & Sherman, Clel Georgetta,* and *Clyde D. Souter,* for Respondents.

## OPINION

By the Court, ORR, J.:

Respondents are husband and wife, and as such brought an action in the court below asking damages for injuries alleged to have been suffered by the wife due to the negligence of the defendants. The case was tried by a jury and a verdict rendered in favor of the respondents in the sum of $16,000. From this judgment appellants have appealed and have assigned certain errors upon which they base their claim for a reversal of the judgment.

Assignment No. 1 has three subdivisions, namely: (a)

Sustaining of the general demurrer to the affirmative answer and defense, which alleges contributory negligence of the plaintiff husband, who is alleged to have been driving the automobile; (b) to the giving of instruction No. 9, which reads as follows: "The Court instructs the jury that if you find from the evidence that the defendants in this case were negligent and that such negligence was the proximate cause of the injuries, if any, received by Elizabeth E. Boyd, then your verdict should be for the plaintiffs even if you should also believe from the evidence that H. E. Boyd was guilty of contributory negligence."

(c) To the refusal of the court to give defendant's offered instruction No. 5, which reads as follows: "I instruct you that in an action for injuries by the wife received in a collision where the automobile in which the wife was riding was being driven by her husband and where the husband is guilty of negligence in the operation of his automobile, proximately contributing to the accident and the wife's injuries, such negligence is imputable to the wife and constitutes a defense just as if the injuries received by the wife resulted from her own negligence."

The issue raised under the assignments above stated is: may the contributory negligence of the husband be imputed to the wife in the State of Nevada? At the outset we may state that appellants present the affirmative of this question, fortified by an unanimity of authority in their favor from each of the community property states which have passed upon it, namely: Texas, Louisiana, Washington, California, Idaho and Arizona. These comprise six of the eight community property states. If this court can accept the reasoning employed by the courts of the states mentioned, in arriving at their conclusion that the proceeds flowing from a cause of action for a personal injury to the wife is community property, then this judgment should be reversed. We have given much attention to this subject, realizing its importance and, further, realizing that the

decisions of the very eminent courts of the several states mentioned merit careful consideration. Ordinarily, such an array of reputable authority would almost at once persuade us to follow the same course. But careful analysis has lead us to the conviction that in the beginning the course was charted wrong, and "there is no sufficient ground of justice or social policy to refuse the innocent wife any and all recovery because of the husband's contributory negligence." 24 Cal. Law Review 741. The courts of the community property states have classed such a cause of action and the proceeds thereof as community property because of the statutes of those several states defining separate and community property, which statutes are very much the same as the statutes of this state.

Section 3355 N. C. L. provides, in part, as follows: "All property of the wife, owned by her before marriage, and that acquired by her afterwards by gift, bequest, devise or descent, with the rents, issues, and profits thereof, is her separate property."

Section 3356 N. C. L. provides: "All other property acquired, after marriage, by either husband or wife, or both, except as provided in sections 14 and 15 of this act, is community property."

Sections 14 and 15 of the act have no bearing on the points under consideration.

Hence the holding of the states mentioned, supra, that a cause of action for personal injuries to the wife, or the proceeds of the recovery from such a cause of action, not being property owned by the wife before marriage or acquired by her afterwards by gift, bequest, devise or descent, or the rents, issues or profits thereof, must necessarily be community property.

Appellants contend that the provisions of the statute are plain and direct, and that to say that the cause of action and proceeds thereof, acquired after marriage, is separate property is to carve out of the community property law additional property, which, if it is to be done, is for the legislature and not for the courts.

We are in complete agreement that changes in the law are for the legislature. No matter how great the injustice resulting from the application of the hard and fast rule depriving the innocent wife of compensation for injuries because of the contributory negligence of the husband may appeal to us, we cannot evade such an application unless convinced it is not a proper one under the law.

In construing section 3356 N. C. L., much depends upon the breadth of meaning given the word "acquired" as used therein. We are aware that a sufficiently broad definition can be given it so that it will envelop every known mode and manner of property acquisition, and thus be made to squarely fit the pattern of interpretation found in the cases dealing with like statutes in the community property states hereinbefore referred to. We are persuaded that the word should be read and interpreted in the light of the uses and purposes of community property and the establishment of community rights; and in so reading it we doubt very much whether it logically can be said that the legislature used the word in the sense that it was to be all-comprehensive. It seems more logical to conclude that the word was used in the more restricted sense of embracing wages, salaries, earnings or other property acquired through the toil or talent or other productive faculty of either spouse; that they did not have in mind compensation for an injury to the person which arises from the violation of the right of personal security, which said right the wife brings to the marriage.

If compensation to a married woman for personal injury is not made community property by section 3356 N. C. L., then its character as to being separate or community must be determined by the generally accepted rules of property classification. In fixing the classification of the proceeds flowing from compensation for a personal injury to the wife in this case, it seems unnecessary to discuss the refinements involved in the question of whether a chose in action for a tort is property,

for the reason that the judgment and proceeds flowing therefrom are conceded to be property, and the judgment takes its character from the right violated, namely, the right of personal security. We quote with approval the following, taken from McKay on Community Property, Second Edition, p. 296, par. 398:

■ "The character of the judgment as separate or common takes its character from the right violated; and that a cause of action for a personal injury is based on the violation of a separate right, namely, the right to personal security, than which no right is more intensely personal and separate. This right is so intensely personal and separate that it cannot be held by another as trustee nor in common with another. This right belonged to the wife at common law, and so did the cause of action for its violation. There has never been any mistake about this in the common-law authorities, though the later cases make it more clear than did the older ones.

■ "The general rule adopted by the courts is in conflict with the fundamental principles of compensation. The common-law rule is well established that the plaintiff's compensation must be limited to the loss he has sustained by the defendant's act. In case of the wife's personal injury, the husband at common law was permitted to recover for the loss of the wife's services and the expense of her care and cure, in his own right; but in his own right he could not recover more; he could not recover for her personal injury.

■ "The husband as head of the community sustains the same relation to the wife as at common law, so far as the present question is concerned—he is entitled to her services, and is liable for the expense of her care and cure, and for the violation of these rights he should recover. But neither at common law or by the law of community does he hold the wife's right to personal security and should not be permitted to recover for the violation of this right. It does not belong to him nor

to the community. The wife's physical pain and suffering are not his loss nor the loss of the community."

■ Our statute, section 3356 N. C. L., and other related statutes were taken from California. So far as we have been able to discover, appellant has not contended that we should place the same construction on this statute as have the courts of California, by reason of said statute having been taken from said state. This could not be so, because the rule in California at the time of the enactment of our statute was different than at present.

Because the judgment and proceeds thereof are property, it seems unnecessary to make a determination of the point urged by appellant to the effect that the words "things in action" used in section 9022 removes any question as to whether a cause of action for personal injury is property. The same may be said as to the controlling effect of the case of Forrester v. Southern P. Co., 36 Nev. 247, 134 P. 753, 136 P. 705, 48 L. R. A. (N. S.) 1.

From what has been said, it follows that the contributory negligence of the husband cannot be imputed to the wife in this state.

Under assignment of error No. 2, the appellants contend that the court erred in giving instruction No. 14, which reads as follows: "The Court instructs the jury that when the defendants in this case entered into a contract with the State of Nevada they assumed the duty of giving the traveling public warning of a dangerous condition upon the highway, in the manner and by the means specified in the contract. You are further instructed that if you find from the evidence that at the time and place of the accident, the highway was in a dangerous condition, and that the defendants failed or neglected to give warning to the traveling public in the manner and by the means specified in the contract, and that such failure or neglect was a proximate cause

of the injuries, if any, sustained by the plaintiff, Elizabeth E. Boyd, then your verdict should be for the plaintiffs."

■ And appellants ask the question: Is the measure of duty owed by the defendants to the plaintiffs in this case to be determined by the terms of the contract between the state and the appellants, or is that duty to be found, determined and measured by the terms of the common law? They contend that the respondents were not parties to the contract, and that there is no such privity of contract existing between respondents and the State of Nevada as would entitle appellants to sue for breach of a contract. Appellants admit that there is a division of authorities as to whether or not a contract such as in question here inures to the benefit of the traveling public, but insists that this court is committed to the rule that it does not, by reason of the decision in the case of Ferris v. Carson Water Co., 16 Nev. 44, 40 Am. Rep. 485. An action was brought on the contract under consideration in that case, by an individual, for an alleged breach thereof by the water company, on the theory that the provisions of the contract inured to the benefit of the residents of Carson City. This court correctly held that there was no such privity of contract existing between the residents of Carson City and the water company as would permit the said resident to sue on the contract. A different question is presented here. Respondent did not sue for breach of contract, but in tort based on the negligence of appellant. The theory of the introduction in evidence of the contract and the giving of instruction No. 14 and other instructions in the case was to show the precautions which appellants assumed and deemed necessary to safeguard the traveling public; they thereby agreed and acknowledged that the measures and precautions named in the contract were necessary to protect the traveling public, and in effect committed themselves to the proposition that to do less would constitute negligence on their part. By their contract they

acquiesced in and set the standard of duty. And the jury were told that in determining whether or not the appellants were negligent they had a right to use as a determining factor what the appellants themselves had considered adequate. As stated in Karle v. Reed, 1 Cal. App. (2d) 144, 36 P. (2d) 150, 152, 37 P. (2d) 694: "[The contractor] owed the traveling public the common-law duty of protection from injury resulting from its negligence. The contract established a standard of care to be used by the contractor in performing this duty. We see no reason why the contractor should not be held to this standard of care to which it formerly consented."

The statement in the case of Metcalf v. Mellon, 57 Utah 44, 192 P. 676, has application here: "The contract is a measure of the contractor's duty. If he assumes a responsibility broader than that of his common-law liability for negligence, he becomes liable for torts arising out of a breach of such duty which are the proximate cause of injury to third persons."

This is an action founded in tort for negligence, and not for breach of contract. A reading of the instructions given by the court plainly evidences that the court so understood and so limited the force and effect of the provisions of the contract. To single out instruction No. 14 and lay stress upon some of its provisions may give color to the contention made by appellants. But, as heretofore stated, a reading of other pertinent instructions given, in connection with instruction No. 14, negatives such contention.

The reception of the contracts in evidence and the giving of instruction No. 14 did not change the cause of action from one arising in tort to one based on a contract.

Under assignment of error No. 3, appellants complain of the refusal of the trial court to allow them to make an offer of testimony. In order to properly present the situation as it existed, it is necessary for us

to quote certain of the evidence appearing on pages 556 to 558 of the record on appeal, as follows:

"Q. How fast were you driving down the canyon?

Mr. Georgetta: Object to that, your Honor, that is also too far removed, irrelevant and immaterial. I can see no purpose in this testimony.

"Mr. Griswold: If the Court would like to hear I can give your Honor the purpose of it. The Court will recall they testified about the time they left and that Mr. Boyd testified repeatedly that he never drove over 45 miles an hour.

"Mr. Georgetta: If the Court please, this is not within the issues of this case in any respect. There is nothing in the allegations of the complaint, nothing in the answer—

"The Court: The objection is sustained.

"Mr. Griswold: (Q) Mr. Wilcox, when you passed this car, what did the car do, this Ford V–8 car that you have testified to, what did it do?

"Mr. Georgetta: The same objection.

"The Court: Objection sustained.

"Mr. Griswold: May I be heard on that, if the Court please, for just a second before the objection is sustained?

"The Court: Well, I have sustained the objection, Mr. Griswold. You may proceed with the examination.

"Mr. Griswold: (Q) When you started—when you had passed these cars and started down the road, did you see that car any more, that Ford V–8? A. No, I didn't see them until I got the other side of Wadsworth.

"Q. I am talking about when you first passed it. Did that car keep in sight of you after that time? A. Yes, he kept right at my tail all the way into Wadsworth.

"Q. And how fast were you driving at that time?

"Mr. Georgetta: The same objection, your Honor. Not within the issues and the pleadings in this case.

"The Court: The objection is overruled. The answer will be confined to the time they went through Wadsworth, or beyond that.

"Mr. Griswold: I did not hear your Honor.

"The Court: I say the answer will be confined to when they went through Wadsworth, or just beyond it. You may confine your answer to that. Read the question.

"(The Reporter read the question.)

"The Court: (Q) That means at that time, or at the time you went through Wadsworth or just beyond Wadsworth? A. I was driving about thirty miles an hour through Wadsworth.

"Mr. Griswold: Now, when you got over beyond Wadsworth—withdraw that. If the Court please, at this time may I ask that the jury be excused in order that I—

"The Court: No, proceed with the trial, Mr. Griswold. If you are not satisfied with the rulings of the Court I will give you an exception. Proceed.

"Mr. Griswold: May I have the record show this, if the Court please, that I offer at this time to show what the witness would testify to in order that I may have my record with reference to it, because the record is not tied in at this time and there is no opportunity during the trial.

"The Court: No, you may proceed with the examination."

It will be noted that at the time counsel for appellants requested permission to make an offer of proof, the court had made a favorable ruling on an objection to a question asked, and was permitting counsel to proceed with the development of the evidence then being elicited. If counsel desired to introduce evidence other than was being elicited at the time, he should have first brought the matter to the attention of the court by proper questions to the witness, and if he had received an adverse ruling, then requested permission to state what he intended to prove. But, perhaps due to the stress and heat of the trial, counsel failed to recognize the existing condition of the record, and hence the court

did not err in refusing to permit an offer of proof, under the existing circumstances.

■ Under assignment No. 4 appellants complain of the reception of evidence relative to services performed by Mrs. Boyd before the accident and help that it has been necessary to employ since the accident, work that the husband was required to do, and certain expenses incurred, because such evidence was entirely without the issues. We think that the reception of such evidence, though it may have been improper, was entirely cured and rendered harmless by the giving of instructions No. 20 and No. 21, which informed the jury as to the issues before them and the items upon which they could base damages. Said instructions are as follows:

"20. I instruct you that in this case the plaintiffs are not asking to be awarded any damages for medical, hospital or other expenses due to Mrs. Boyd's injuries, nor are they asking for compensation for loss of her services. You should, therefore not take any of these items or elements into consideration in allowing damages, if any, to the plaintiffs.

"21. The Court instructs the Jury that if you find for the plaintiffs you will assess Elizabeth E. Boyd's damages at such a sum of money as in your opinion will be a reasonable and just compensation for the injuries she has sustained. In estimating the damages you will take into consideration the physical and mental pain, if any, she has sustained by reason of such injuries, if any, and if you believe from the evidence that Elizabeth E. Boyd has not yet recovered, and that her injuries, if any, are permanent, and that hereafter she will suffer pain and anguish therefrom, then you will take this into consideration in estimating the damages."

Appellants' contention that respondent H. E. Boyd was guilty of contributory negligence as a matter of law requires no consideration in view of our holding that the contributory negligence of the husband is not imputable to the wife.

The judgment and order appealed from are affirmed.

ON PETITION FOR REHEARING

June 27, 1940.

*Per Curiam:*

Rehearing denied.